# In the United States Court of Federal Claims

No. 16-1268
Filed: June 11, 2019

|  |  |  |
|---|---|---|
| JUST IN TIME STAFFING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Contract Disputes Act; Constructive |
| v. | ) | Change; Inherently Governmental |
| | ) | Function; National Labor Relations Act. |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

*Joseph A. Whitcomb*, Denver, Colorado, for plaintiff.

*Andrew James Hunter*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

**OPINION**

**FUTEY**, *Senior Judge*

This case is before the Court on defendant's amended motion to dismiss plaintiff's amended complaint, which was filed on July 6, 2017, pursuant to rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). Defendant filed its motion on August 23, 2017. Plaintiff filed its response on September 20, 2017, and defendant its reply on October 4, 2017.

Plaintiff seeks costs incurred during labor negotiations, which plaintiff alleges were sustained performing work in connection with a government contract that the Government should have performed. Defendant contends that plaintiff fails to state a claim for which relief

may be granted, because plaintiff was performing its own legal duty to conduct labor negotiations with its employees and the Government did not have a duty to intervene in those negotiations. Defendant further argues that the Court does not possess subject matter jurisdiction over plaintiff's claims, because the alleged damages stem from the conduct of third parties and not the Government.

The Court held oral argument on these matters on November 2, 2017. The matter is now ripe for decision.

## I. BACKGROUND

### a. Factual Background

The plaintiff entered into a contract with the United States Army Health Medical Command's ("MEDCOM" or "Government") Health Contracting Activity on March 6, 2014. Am. Compl. ¶ 1; ECF No. 23-1 at 1 ("Contract").[1] Contract Number V797P-4747A, a non-personal services contract, required plaintiff to provide medical clerks and other administrative staffing services at the Carl R. Darnell Army Medical Center ("Medical Center") in Fort Hood, Texas. Am. Compl. ¶¶ 5, 9; Contract at 2. Prior to end of the base period of the contract, the International Union of Operating Engineers Local Union 351, AFL-CIO ("Union") filed a petition with the National Labor Relations Board ("NLRB"), which sought to require plaintiff's "non-government employee subcontractors to vote to become members of a labor union[.]" Am. Compl. ¶ 9. The Contracting Officer ("CO") instructed plaintiff to negotiate a Collective Bargaining Agreement ("CBA") with the prospective labor union, representing that any "reasonable" increase in costs resulting from the labor negotiations would be incorporated into a

---

[1] Plaintiff's amended complaint states that the Contract was awarded on April 1, 2014. Am. Compl. ¶ 4. The Contract, however, was signed on March 6, 2014. *See* Contract at 1. Plaintiff confirmed this at oral argument. *See* ECF No. 26 ("11/2/17 TR 1–102") at 12.

contract modification. *Id.* ¶ 13. Plaintiff incurred $105,000.76 as a result of the consulting and legal expenses associated with the labor relations negotiations. *Id.* ¶ 14. Plaintiff represented at oral argument that it incurred $92,000 of these expenses as a result of hiring a labor attorney to negotiate with the prospective union. TR 28. It hired this labor attorney because it believed that it could be responsible for the costs of an increase in employees' wages, based upon the CO's representation. *Id.*

The plaintiff requested that MEDCOM not exercise the contract's first option year, "[a]fter it became clear that a CBA was likely to be adopted, . . . because the terms of a CBA, without an equitable adjustment, would have caused [plaintiff] to have to perform at or near an economic loss." *Id.* ¶ 12. Therefore, MEDCOM elected not to exercise the contract's first option year and awarded the contract to the predecessor contractor. *Id.* ¶ 18. On March 9, 2016, plaintiff requested an equitable adjustment of the contract to include the costs it incurred during labor relations negotiations. *Id.* ¶ 14. On April 26, 2016, the CO denied plaintiff's request. ECF No. 1-2 at 1.

### b. Procedural Background

On October 4, 2016, the plaintiff filed a complaint in this Court and an amended complaint on July 6, 2017. The amended complaint contains six claims: (1) plaintiff was impermissibly required to exercise inherently governmental authority, Am. Compl. ¶¶ 23–27; (2) plaintiff is entitled to an equitable adjustment, *id.* ¶¶ 28–34; (3) defendant's conduct constituted a cardinal change and breach of the contract, *id.* ¶¶ 34–39; (4) defendant breached the duty of good faith and fair dealing, *id.* ¶¶ 40–45; (5) defendant breached the duty to disclose superior knowledge, *id.* ¶¶ 46–51; and (6) plaintiff is entitled to attorney fees and costs, *id.* ¶¶ 52–54.

On August 23, 2017, the defendant filed an amended motion to dismiss ("Def. Mot.") the amended complaint, pursuant to RCFC 12(b)(1) and 12(b)(6). Plaintiff filed a response ("Pl. Resp.") on September 20, 2017 and defendant a reply ("Def. Reply") on October 4, 2017. On November 2, 2017, the Court heard oral argument on the motion. This matter was transferred to the undersigned on May 3, 2019.

## II.  DISCUSSION

The defendant moves to dismiss plaintiff's amended complaint for either lack of subject matter jurisdiction or for failure to state a claim upon which relief may be granted. Def. Mot. at 1. Defendant argues that the Court lacks jurisdiction to adjudicate the claims in the amended complaint, because plaintiff's claims are not actually against the United States, but rather are against its own employees or the Union. *Id*. at 11–12. Alternatively, defendant argues that each of plaintiff's claims fails to state a claim upon which relief may be granted. *Id.* at 12.

### a.  Legal Standard

Before reaching the merits, a "court must satisfy itself that it has jurisdiction to hear and decide" the case. *Hardie v. United States*, 367 F.3d 1288, 1290 (Fed. Cir. 2004) (quoting *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1241 (Fed. Cir. 2002)). Rule 12(b)(1) of this Court authorizes a party to file a motion asserting a "lack of subject-matter jurisdiction." RCFC 12(b)(1). "In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Stephens v. United States*, 884 F.3d 1151, 1155 (Fed. Cir. 2018) (quoting *Estes Exp. Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014)). "The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Securiforce Int'l Am., LLC v. United States*, 879 F.3d 1354, 1359 (Fed. Cir. 2018).

Rule 12(b)(6) permits a party to file a motion to dismiss for "failure to state a claim upon which relief can be granted." RCFC 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual allegations that, if true, would state a claim to relief that is plausible on its face." *Athey v. United States*, 908 F.3d 696, 705 (Fed. Cir. 2018) (internal quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And, as with Rule 12(b)(1), the Court "must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant." *Athey*, 908 F.3d at 705.

### b. The Court Possesses Jurisdiction to Adjudicate Some of the Claims in the Amended Complaint

The first issue for the Court to resolve is whether it possesses jurisdiction to adjudicate plaintiff's claims.

The Court has jurisdiction, under the Tucker Act, to adjudicate a claim arising under, and satisfying the requirements of, the Contract Dispute Act ("CDA"), 41 U.S.C. §§ 7101–7109. *See* 28 U.S.C. § 1491(a)(2). The CDA applies, in relevant part, "to any express or implied contract . . . made by an executive agency for . . . the procurement of services." 41 U.S.C. § 7102(a). The contract at issue in this case required plaintiff to provide administrative staffing services to MEDCOM; it, therefore, falls within the CDA. *See* Contract at 2; Am. Compl. ¶¶ 5, 9. Consequently, each claim must satisfy the requirements of the CDA for the Court to have jurisdiction over it.

Under the CDA, "[j]urisdiction requires both that a claim meeting certain requirements have been submitted to the relevant contracting officer and that the contracting officer have issued a final decision on that claim." *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015). A claim is "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the

5

adjustment or interpretation of contract terms, or other relief arising under or relating to th[e] contract." *Securiforce*, 879 F.3d at 1359 (modification in original) (quoting 48 C.F.R. § 52.233-1(c)).

The Court has jurisdiction over a claim if it arises from the "same operative facts" and requests "essentially the same relief," as a claim presented to the CO, even if the complaint alleges a "slightly different legal theor[y.]" *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365–66 (Fed. Cir. 2003). A complaint, however, that presents "a materially different factual or legal theory . . . does create a different claim." *K-Con Bldg. Sys.*, 778 F.3d at 1006. In other words, a contractor must include "enough detail to provide adequate notice of the basis" of a claim to the CO, for the Court to have jurisdiction over that claim. *Id.* at 1008; *see also Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987) (holding that the contractor must provide "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim"). The Court must determine whether each claim satisfies the jurisdictional standard. *K-Con Bldg. Sys.*, 778 F.3d at 1005 ("[T]he jurisdictional standard must be applied to each claim, not an entire case[.]").

The plaintiff submitted a request for an equitable adjustment on March 9, 2016. Am. Compl. ¶ 2; ECF No. 1-1 at 1 ("REA"). The REA requested "a contract adjustment based upon changed contractual conditions [plaintiff] encountered during its performance of the contract." REA at 1. Plaintiff alleged that it "was compelled to undertake additional responsibilities that were inherently governmental[,]" which caused it to incur $105,000.76 in expenses from "negotiating with the service employees union on the [G]overnment's behalf[.]" *Id*. Plaintiff further claimed that "no Agency official took any action with regard to the [labor] petition,

leaving [plaintiff] to represent the Agency." *Id.* at 2.  The CO issued a final decision denying the request on April 26, 2016. Am. Compl. ¶ 2; ECF No. 1-2.

### i. The Court Has Jurisdiction to Adjudicate Plaintiff's Inherently Governmental Function Claim

Count I of the amended complaint alleges that the plaintiff was required to perform an inherently governmental function in connection with the contract, based on MEDCOM "[a]brogating its responsibility to address the NLRB petition[.]" Am. Compl. ¶ 27. This claim was first presented to the CO for a final decision. *See* REA at 1 (Plaintiff "was compelled to undertake additional responsibilities that were inherently governmental . . . negotiating with the service employees union on the [G]overnment's behalf[.]"). In addition, the claim presented to the CO was a written demand for a sum certain on which the CO issued a final decision. Therefore, the Court has jurisdiction to adjudicate this claim.

The defendant's argument to the contrary is misplaced. Defendant argues that this claim, "[i]n reality," is against the plaintiff's own employees or the labor union. Def. Mot. at 12. This misunderstands plaintiff's claim; plaintiff alleges that the Government's failure to act in connection with the contract caused it to perform an inherently governmental function and incur the expense of the labor relations negotiations. It is a claim against the Government, over which the Court possesses jurisdiction.

### ii. The Court Has Jurisdiction to Adjudicate Plaintiff's Equitable Adjustment Claim

Count II of the amended complaint alleges that the plaintiff "is entitled to receive $105,000.76 as an equitable adjustment for additional legal expenses it incurred as a result of the Government's failure to provide support to [plaintiff] as it was forced to undertake inherent governmental authority" and that this constituted "a constructive contact change." Am. Compl. ¶

7

34. While the REA does not explicitly state that the Government's conduct caused a constructive contract change, it does allege the facts on which the constructive contract claim is based, offering "enough detail to provide adequate notice of the basis" of the equitable adjustment claim. *K-Con Bldg. Sys.*, 778 F.3d at 1006. Count II does not present "a materially different factual or legal theory" than the REA. *Id*. The allegations in Count II, therefore, were presented to the CO. This claim was also a written demand for a sum certain on which the CO issued a final decision. Consequently, the Court has jurisdiction to adjudicate this claim.

### iii. The Court Does Not Have Jurisdiction to Adjudicate Plaintiff's Cardinal Change Claims

Count III of the amended complaint alleges that the Government "changed the contract unilaterally" causing a cardinal change. Am. Compl. ¶¶ 36, 39. Specifically, plaintiff alleges that the CO "instructed [plaintiff] to negotiate with the labor union for costs the [G]overnment stood to incur" and stated "that [the Government] could not reimburse [plaintiff] for legal costs despite language in the solicitation and contract to the contrary." *Id*. ¶¶ 37–38. These contentions constitute factual allegations that were not presented to the CO in the REA.

The factual predicate on which the REA relies for its claim to the CO is that the Government's failure to act caused plaintiff to encounter changed conditions and perform an inherently governmental function in negotiating with the union. The factual predicate of Count III is that the Government affirmatively misled plaintiff by instructing it to negotiate with the labor union and representing that it would not reimburse plaintiff for its legal costs. This constitutes a "materially different factual theory" and the REA "fails to allege enough detail to provide adequate notice of the basis" of this claim. *K-Con Bldg. Sys.*, 778 F.3d at 1006, 1008; *see also Canpro Invs. Ltd. v. United States*, 130 Fed. Cl. 320, 336 (Fed. Cl. 2017) (finding that the claim for superior knowledge was not presented to the CO, because the claim presented to

the CO was based on a different factual predicate). Therefore, because Count III was not first presented to the CO for a final decision, the Court does not possess jurisdiction to adjudicate it.

### iv. The Court Does Not Have Jurisdiction to Adjudicate Plaintiff's Breach of the Duty of Good Faith and Fair Dealing Claim

Count IV of the amended complaint alleges that the Government breached the duty of good faith and fair dealing in two ways: (1) "when [the CO] instructed [plaintiff] to negotiate on behalf of the [G]overnment[;]" and (2) "when [the CO] deliberately misled [plaintiff] into believing that a CBA was already in place and that the prevailing wages listed were the only labor costs." Am. Compl. ¶¶ 44–45. The first theory was not presented to the CO for the same reasons as the cardinal change claim; the second theory also was not presented to the CO, because the REA provides no facts alleging a misrepresentation by the CO or a representation that "the prevailing wages listed w[ould be] the only labor costs." *See generally* REA. The REA states that "no collective bargaining agreement was in place" when plaintiff was awarded the contract. *Id.* at 1. This statement does not provide adequate notice of the claim in the amended complaint that "the [G]overnment was aware of the pending CBA before the contract award" and that the "CO included misleading language in the solicitation that would have led any reasonable offeror to believe that a CBA was already in place and that the prevailing wage list included in the solicitation was the only labor costs an offeror would incur." Am. Compl. ¶¶ 42–43. Therefore, the Court does not have jurisdiction to adjudicate plaintiff's good faith and fair dealing claims. *See RMA Eng'g S.A.R.L. v. United States*, 140 Fed. Cl. 191, 221 (Fed. Cl. 2018) (finding that the Court lacked jurisdiction to adjudicate a claim for breach of the duty of good faith and fair dealing, because the REAs did not contain "the operative facts" of such a claim).

> v. **The Court Does Not Have Jurisdiction to Adjudicate Plaintiff's Breach of the Duty to Disclose Superior Knowledge**

Count V of the amended complaint alleges that the Government had superior knowledge regarding the "pending N[LR]B decision, but omitted any notice from [the] solicitation and contract." Am. Compl. ¶ 50. The REA states that there was no CBA in place at the time of contract award and a petition was filed with the NLRB "[p]rior to the end of the base contract period[.]" REA at 1. It does not, however, allege any facts that would suggest the Government had knowledge of this pending NLRB decision or that the Government withheld superior knowledge in the solicitation and contract. *See generally id.* The REA "fails to allege enough detail to provide adequate notice of the basis" of this claim. *K-Con Bldg. Sys.*, 778 F.3d at 1008; *see also Canpro*, 130 Fed. Cl. at 336 (finding the plaintiff's allegations "regarding superior knowledge were not first presented to the contracting officer"). Therefore, the Court does not possess jurisdiction to adjudicate plaintiff's claim for a breach of the duty to disclose superior knowledge.

> c. **Plaintiff Has Failed to State a Claim Upon Which Relief May Be Granted**

Having decided that the Court has jurisdiction to adjudicate Counts I and II of the amended complaint, the Court now turns to defendant's arguments that both claims fail to state a claim upon which relief may be granted. The Court analyses each in turn.

> i. **Plaintiff Did Not Perform an Inherently Governmental Function**

Federal Acquisition Regulation ("FAR") 7.503(a), which applies to "to all contracts for services" with a few inapplicable exceptions, 48 C.F.R. § 7.502, states that "[c]ontracts shall not be used for the performance of inherently governmental functions[,]" *id.* § 7.503(a). FAR 2.101 defines an "inherently governmental function" "as a matter of policy, [as] a function that is so intimately related to the public interest as to mandate performance by Government employees."

*Id.* § 2.101. It "includes activities that require either the exercise of discretion in applying Government authority, or the making of value judgments in making decisions for the Government." *Id.* FAR 7.503(c) lists examples of functions considered to be inherently governmental; this list includes: "[t]he direction and control of Federal employees[;]" "[a]warding [prime] contracts[;]" and "[d]etermining whether [prime] contract costs are reasonable, allocable, and allowable[.]" *Id.* § 7.503(c)(7), (c)(12)(iv), (c)(12)(vii).

The plaintiff argues that conducting labor relations and "negotiating on behalf of the [G]overnment was an inherently governmental function." Pl. Resp. at 9; *see also* Am. Compl. ¶ 26. It argues that any CBA negotiated with its employees would have applied to Federal employees,[2] Am. Compl. ¶ 26, and that, under FAR 52.222-43, included by reference in the contract, the Government would have had to bear the costs of any increase in plaintiff's contract expenses due to the CBA. TR 7–8.

The defendant argues that the plaintiff did not perform an inherently governmental function, because the National Labor Relations Act ("NLRA") imposes a duty on employers to conduct labor relations with their own employees. Def. Mot. at 13. The employees attempting to unionize in this case were plaintiff's employees and not the Government's employees, as evidenced by the "non-personal services" nature of the contract. *Id.* at 14–15. In addition, MEDCOM had no duty or legal authority to provide legal assistance to plaintiff regarding labor relations. *Id.* at 17. In response to the plaintiff's argument that under FAR 52.222-43 the

---

[2] The rationale behind plaintiff's argument that a CBA would apply to Federal employees is not completely clear. During oral argument, plaintiff appeared to indicate it would so apply for two reasons. First, because of the level of control the Government would exercise over plaintiff's employees. TR 24–25. And second, because of the contract requirement for a new contractor to offer a right of first refusal to a predecessor contractor's employees for a base period. This would require the Government to offer the right of first refusal at the rate negotiated by plaintiff, if it decided to not contract out the staffing services. *Id.*

Government would have to pay any increase in wages resulting from the CBA, the defendant argues that such an increase would have to be accepted by the CO under that same FAR provision. TR 41.

The NLRA, 29 U.S.C. §§ 151–169, provides employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection[.]" 29 U.S.C. § 157. Section 158(d) creates a mutual obligation on employers and the representatives of employees "to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment[.]" *Id.* § 158(d). The definition of "employer" specifically excludes "the United States[.]" *Id.* § 152(2).

The contract at issue required plaintiff to provide medical clerks and other administrative staffing services to the Government. Contract at 2. In other words, the Government contracted plaintiff to employ staff at the Medical Center. *See, e.g.,* Contract at 160 ("The Contractor and its subcontractors shall determine the number of service employees necessary for efficient performance of this contract and may elect to employ fewer employees than the predecessor Contractor employed in connection with performance of the work."). The fact that the employees were plaintiff's employees and not the Government's is further confirmed by the fact that the contract was one for "Non-Personal Services[,]" which is defined under the FAR as "a contract under which the personnel rendering the services are not subject, either by the contract's terms or by the manner of its administration, to the supervision and control usually prevailing in relationships between the Government and its employees." 48 C.F.R. § 37.101. Because the employees electing to exercise their collective bargaining rights were plaintiff's employees, it

12

was plaintiff's responsibility under the NLRA to "meet at reasonable times and confer in good faith" with their representatives. *Id.* § 158(d).[3] Therefore, the plaintiff has failed to allege sufficient facts to prove it was performing an inherently governmental function; it has not plausibly suggested that it was exercising "discretion in applying Government authority" or making "value judgments in making decisions for the Government." *Id.* § 2.101.

The plaintiff is correct that, under FAR 52.222-43, included by reference in the contract, *see* Contract at 157, the Government, at least after the contract's base period, was required to bear the costs of any increase in plaintiff's contract costs caused by the CBA. FAR 52.222-43(d), the so called "Price Adjustment Clause," states, in part:

> The contract price, contract unit price labor rates, or fixed hourly labor rates will be adjusted to reflect the Contractor's actual increase or decrease in applicable wages and fringe benefits to the extent that the increase is made to comply with or the decrease is voluntarily made by the Contractor as a result of . . . [a]n increased or decreased wage determination [] applied to the contract by operation of law.

*Id.* § 52.222-43(d). A wage determination applied by operation of law includes "when a successor contract is bound by the wages and benefits provided in a predecessor contractor's collective bargaining agreement[.]" *Call Henry, Inc. v. United States*, 855 F.3d 1348, 1352 (Fed. Cir. 2017); *see also Lear Sieglar Servs., Inc. v. Rumsfield*, 457 F.3d 1262, 1268 (Fed. Cir. 2006) ("Regulations make clear that the term 'wage determination' includes a CBA-defined benefit level." (citing 29 C.F.R. § 4.50)). A contractor can also be a successor to itself. *See Lear*, 457 F.3d at 1268. In addition, if the Price Adjustment Clause is triggered, the Government is required to adjust the contract costs. *Id.* In *Lear*, the United States Court of Appeals for the Federal

---

[3] If the employees were those of the Government, the NLRA would not have applied. *See id.* § 152(2) (excluding "the United States" from the definition of employer). Instead, such a matter would have been overseen by the Federal Labor Relations Authority. *See* 5 U.S.C. § 7105.

Circuit reversed a decision by the United States Armed Services Board of Contract Appeals and granted summary judgment to the plaintiff on the grounds that the Government was required to compensate plaintiff for the increased costs of providing its employees with a defined-benefit health plan, pursuant to the terms of a CBA. *Id.* ("We conclude that [the CBA required an actual increase in fringe benefits] . . . , thereby triggering the government's obligations under the Price Adjustment Clause."). Therefore, in this case, the Government would have been obligated to adjust the contract price to cover plaintiff's increased costs of its employees' wages, pursuant to the CBA, following the contract's base period.

The fact that the Government would have been responsible for plaintiff's additional expense as a result of the CBA, however, does not convert plaintiff's duty under the NLRA as a private employer to negotiate with its employees into an inherently governmental function. While the Government would have been liable for the additional wage costs resulting from the CBA, it was not liable for the costs of negotiating the CBA. *See Call Henry*, 855 F.3d at 1355 (holding that plaintiff's increased pension benefit costs were not increased costs of complying with a wage determination). Plaintiff had an independent statutory obligation to "confer in good faith" with the prospective union. 29 U.S.C § 158(d). The fact that the Government could incur additional costs as a result of these negotiations does not make this "a function that is so intimately related to the public interest as to mandate performance by Government employees." 48 C.F.R. § 2.101.

The Government already exercised its discretion and made a policy decision in the Price Adjustment Clause that "the government is willing to increase contract price when contractors incur increased costs as a result of complying with an increase in the wage determination applicable to their contract." *Call Henry*, 855 F.3d at 1351. This is because "the government, as a

customer, is willing to pay a premium for services in return for its contractor's obligation to compensate service employees adequately and fairly." *Id.* The Government is also not opening itself to a potential exorbitant increase in contract prices, because the NLRA requires employers to negotiate in good faith. *See* 29 U.S.C. § 158(d). This situation is, therefore, not analogous to FAR 7.503(c)(12)(vii)'s example of an inherently governmental function of "[d]etermining whether [prime] contract costs are reasonable, allocable, and allowable[.]" 48 C.F.R. § 7.503(c)(12)(vii). That determination was already made in awarding the contract. Consequently, the plaintiff has not alleged sufficient facts to show that it performed an inherently governmental function in negotiating with the prospective labor union and, therefore, Count I of the amended complaint must be dismissed.

### ii. Plaintiff Is Not Entitled to an Equitable Adjustment Due to a Constructive Change in the Contract

To state a claim for a constructive change, a plaintiff must plausibly allege facts sufficient to show: "(1) that it performed work beyond the contract requirements, and (2) that the additional work was ordered, expressly or impliedly, by the government." *Bell/Heery v. United States*, 739 F.3d 1324, 1335 (Fed. Cir. 2014). Plaintiff alleges that the legal expenses incurred "as a result of the Government's failure to provide support to [plaintiff] as it was forced to undertake inherent governmental authority" constituted a constructive contract change. Am. Compl. ¶ 34. This fails to allege sufficient facts to satisfy either prong of a constructive change claim.

Regarding the first prong, the plaintiff, as discussed above, did not undertake an inherently governmental function and had a statutory duty to "confer in good faith" with the prospective union. 29 U.S.C § 158(d). Several provisions incorporated into the contract made clear that plaintiff had this statutory duty. The contract incorporates FAR 52.222-40, which

15

requires the contractor to post a notification of employee rights under the NLRA. Contract at 163–64. The required notice informs that the employees' "employer and the union are required to bargain in good faith in a genuine effort to reach a written, binding agreement setting [the] terms and conditions of employment." 29 C.F.R. Pt. 471, Subpt. A, App. A. FAR 52.222-40(d) states that the "Contractor shall comply with all provisions of the employee notice and related rules, regulations, and orders of the Secretary of Labor." 48 C.F.R. § 52.222-40. The contract also incorporated FAR 52.222-17. Contract at 160. FAR 52.222-17(i) provides for appropriate sanctions to be imposed if the contractor is "not in compliance with the requirements of this clause or any regulation or order of the Secretary [of Labor.]" 48 C.F.R. § 52.222-17(i). Therefore, the plaintiff has failed to allege sufficient facts to plausibly suggest that negotiating with the prospective union was work performed beyond the contract requirements, because the contract required plaintiff to comply with its statutory duty.

As to the second prong, the plaintiff has failed to allege facts sufficient to show that the Government ordered this work. Plaintiff alleges that "as a result of the union activity that was directed at [plaintiff's] subcontracted service providers, [plaintiff] encountered substantially changed conditions[.]" Am. Compl. ¶ 10.[4] This fails to allege that the Government, "expressly or impliedly," ordered the work. *Bell/Heery*, 739 F.3d at 1335. Therefore, the plaintiff has failed to allege facts plausibly suggesting a constructive change entitling it to an equitable adjustment. Accordingly, Count II of the amended complaint must be dismissed.

---

[4] As discussed above, the Court does not possess jurisdiction over claims relying on the factual contention that the CO instructed plaintiff to negotiate with the union, because this presents a "materially different factual" theory than the claim presented to the CO. *K-Con Bldg. Sys.*, 778 F.3d at 1006. Count II of the amended complaint does not rely on this factual contention. *See* Am. Compl. ¶¶ 28–34. The Court, therefore, does not consider whether the alleged fact that the CO instructed plaintiff to negotiate with the union would satisfy the second prong of a constructive change claim.

### III.    CONCLUSION

For the above stated reasons, the following is hereby ordered:

1. Defendant's amended motion to dismiss is **GRANTED**.

2. Plaintiff's amended complaint is **DISMISSED**.

The Clerk is directed to enter judgment accordingly. No costs.

**IT IS SO ORDERED.**

s/ Bohdan A. Futey<br>
BOHDAN A. FUTEY<br>
Senior Judge